AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Iowa

| | |
|---|---|
| United States of America<br>v.<br><br>TRISTAN KAREEM DAVIS<br><br>*Defendant(s)* | ) ) ) ) Case No.<br>)      3:19-mj-151<br>) )<br>) ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  August 1, 2018-November 12, 2019  in the county of  Des Moines  in the
Southern District of  Iowa  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B) | Conspiracy to Distribute a Controlled Substance, to wit: Cocaine Base, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(B) |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Adam Plein, Special Deputy, FBI
*Printed name and title*

☑ Sworn to before me and signed in my presence.

☐ Sworn to before me by telephone or other reliable electronic means.

Date:  11/12/2019

_____
*Judge's signature*

City and state:  Davenport, Iowa    Stephen B. Jackson, Jr., U.S. Magistrate Judge
*Printed name and title*

FILED
By: Clerk's Office, Southern District of Iowa
11:48 am, Nov 12 2019

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

UNITED STATES OF AMERICA )
) ss
SOUTHERN DISTRICT OF IOWA )

I, Adam Plein, being duly sworn state and depose as follows:

### INTRODUCTION

1. I am a Special Deputy with the Federal Bureau of Investigation (FBI), and have been since September 17, 2019. In addition to my position with the FBI, I have been employed with the Des Moines County, Iowa, Sheriff's Office for approximately 11 years, and have been a Detective with the Southeast Iowa Narcotics Taskforce for approximately 2.5 years. Along with my original academy training, I have also attended other law enforcement courses of instruction that focused on the investigation of persons involved in the manufacture, transportation, distribution, and sale of controlled substances. During the course of my law enforcement career, I have participated in the investigations of drug-trafficking organizations and have participated in hundreds of drug investigations. During the course of my career I have been involved in cases that have resulted in the seizure of cocaine, marijuana, heroin, and methamphetamine. I am familiar with and have used normal methods of investigation, including, but not limited to: visual surveillance, questioning of witnesses, execution of search and arrest warrants, utilizing informants, utilizing confidential sources, and utilizing vehicle tracking devices to further investigations into drug trafficking. Moreover, I am a federal law enforcement officer engaged in enforcing the criminal laws, including Title 21, United States Code, Sections 846 and

1

841(a)(1), and I am authorized by the Attorney General to execute a federal search warrant.

2. I make this affidavit in support of a criminal complaint charging **TRISTAN KAREEM DAVIS (DAVIS)** with conspiracy to distribute a controlled substance, to wit: cocaine base, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(B), in the Southern District of Iowa. This affidavit is for the limited purpose of securing the requested criminal complaint. I have set forth only the facts I believe are necessary to establish probable cause, and have not included each and every fact known to me. The information contained in this affidavit, and the grounds for my beliefs, come from my personal knowledge, information provided to me by other members of the investigative team, information contained in reports of other officers, statements made to me by witnesses, and statements of witnesses contained in police reports.

## PROBABLE CAUSE

3. In April 2019, I conducted a debrief interview of a confidential informant (CI 1). CI 1 informed me that he/she could purchase crystal methamphetamine (a.k.a. ice methamphetamine) and crack cocaine (a.k.a. cocaine base) from a black male he/she knew as "KP." CI 1 identified a known photograph of PAGE as the individual he/she knew as KP. CI 1 stated that he/she had obtained large quantities of methamphetamine and cocaine base from PAGE.

4. On July 19, 2019, agents utilized CI 1 to purchase three ounces of cocaine base from PAGE for $3,500. Agents provided CI 1 with $1,200 of pre-

2

serialized buy-fund money to pay towards the three ounces of cocaine base. CI 1 had an arrangement with PAGE that the remainder was to be paid at a later date. CI 1 was also provided an audio/video recording device. CI 1 met with PAGE in Burlington, Iowa. He/she provided PAGE with the $1,200 and PAGE provided CI 1 with approximately three ounces of cocaine base. I have reviewed the recording from this purchase. I have previously interacted with PAGE in person, and recognized his voice on the recording during this purchase.

5. On July 20, 2019, CI 1 contacted agents and stated that PAGE had stopped by his/her residence and stated he needed $1,400. CI 1 stated that he/she felt he/she needed to provide PAGE the money to keep in with him, and provided him the $1,400 at that time. This transaction was not recorded or facilitated by agents.

6. On July 21, 2019, agents utilized CI 1 to conduct a controlled payoff of a drug debt owed to PAGE. CI 1 advised agents that PAGE had told him/her to go to 12XX Doemland Street, in Burlington, Iowa,[1] to pay the remaining debt owed to PAGE for the three ounces of cocaine base obtained from PAGE on July 19, 2019. Agents provided CI 1 with $900 of pre-serialized buy-fund money to pay the debt. CI 1 was also provided an audio/video recording device transmitter. CI 1 went to 12XX Doemland, where he/she met with DAVIS. CI 1 was familiar with DAVIS, and that he was an associate of PAGE. DAVIS advised CI 1 that PAGE was not present. CI 1 provided DAVIS with the $900 for the remaining debt owed to PAGE. CI 1 then discussed with DAVIS the $1,400 he/she had paid PAGE the day before. CI 1 advised

---

1 I am aware of the exact street address, but have redacted the specific address for purposes of this filing. All mentions of 12XX Doemlan Street in this filing are referring to the same specific address.

DAVIS that PAGE could pay him back the $1,400, or that PAGE could keep the $1,400 for what he/she owed him on "the ounce" he/she had obtained from PAGE previously. DAVIS acknowledged this, and indicated he would inform PAGE of this. I have reviewed the recording from this transaction. I am familiar with DAVIS. I was able to see and hear DAVIS during the interaction, and have confirmed the content of the conversation.

7. I believe the information from CI 1 incorporated herein is reliable and trustworthy. Some of the information provided by CI 1 has been independently corroborated by law enforcement. Additionally, some of the information provided by CI 1 is consistent with information received from other sources.

8. On September 13, 2019, the Honorable Sara Darrow, Chief United States District Judge for the Central District of Illinois, authorized the interception of wire and electronic communications and precision location information (PLI) regarding telephone number (630) 461-2069, a phone being utilized by PAGE as a part of his drug organization (PAGE CE).

9. On October 10, 2019, the Honorable Judge Sara Darrow, Chief United States District Judge for the Central District of Illinois, authorized the continued interception of wire and electronic communications and precision location information (PLI) on cellular telephone number (630) 461-2069, a phone used by PAGE.

10. On October 16, 2019, while monitoring the wire and electronic communications of PAGE, agents intercepted communications between phone

number (319) 750-8521 and PAGE. Agents subsequently seized a phone from PAGE CE member Breon ARMSTRONG's person, which was assigned (319) 750-8521. During the conversation on October 16, 2019, a third individual can be heard in the background. This individual is referred to as "Trey." Agents know Trey to be a nickname for DAVIS. Agents believe the three were communicating about a pending narcotics transaction. The following is an excerpt from that conversation:

> **ARMSTRONG**: (inaudible)
>
> **PAGE**: What up with it boy?
>
> **ARMSTRONG**: What's good?
>
> **PAGE**: Ah shit hold on.
>
> **ARMSTRONG**: You say what now?
>
> **PAGE**: I say hold on one second.
>
> **ARMSTRONG**: Alright.
>
> **PAGE**: (in the background) Trey?
>
> **DAVIS**: Ya?
>
> **PAGE**: Come here right quick, hey what you did with that shit Trey, that um clear shit on top of the refrigerator, you know from your house?
>
> **DAVIS**: In the bushes down the street.
>
> **PAGE**: This nigga said the bushes down the street in the white bag.
>
> **ARMSTRONG**: Ah this nigga tripping in the what, in the what?
>
> **DAVIS**: This nigga tripping.
>
> **ARMSTRONG**: Nah man (inaudible).

**PAGE**: Where at in the bushes? What tree?

**ARMSTRONG**: There is a whole bunch of bushes in this bitch.

**PAGE**: He fitting to try to tell you hold on, he fitting to call you right now.

Based on my training and experience, I know that "clear" is a term used to describe ice methamphetamine. The conversation also discussed DAVIS's residence. I know DAVIS has water service in his name at 13XX Garnet Street, Burlington, Iowa.[2] I have done surveillance at 13XX Garnet Street and have observed vehicles parked in front of the residence and in the driveway that I have seen DAVIS drive. Additionally, I have observed PAGE come and go from the residence at 1323 Garnet Street. Based upon this knowledge, I believe the conversation between ARMSTRONG, PAGE, and DAVIS was a discussion of the location of ice methamphetamine, which had been stored in the residence at 1323 Garnet Street, in Burlington, Iowa, but had been moved to a location outside of the residence. I believe the conversation was about ARMSTRONG attempting to locate and take that methamphetamine to another location.

11. During surveillance by law enforcement immediately following this call, officers observed ARMSTRONG leaving 13XX Garnet Street, in Burlington, Iowa.

12. I am aware that another confidential source (CI 2) has testified under oath regarding his/her knowledge of "Trey." CI 2 stated that he/she knows that Trey is a "runner" for PAGE. In the context of drug trafficking, I know a "runner" to be an

---

2 I am aware of the exact address, but have redacted the specific number for purposes of this filing. All references made herein to 13XX Garnet Street refer to the same exact address.

individual who transports drugs. CI 2 further stated that he/she has seen Trey with PAGE and with cocaine.

13. I believe the information from CI 2 incorporated herein is reliable and trustworthy. Some of the information provided by CI 2 has been independently corroborated by law enforcement. Additionally, some of the information provided by CI 2 is consistent with information received from other sources.

14. Based upon information obtained as a part of this investigation, I believe the conspiracy to be on-going.

## CONCLUSION

15. Based on the foregoing, I believe there is probable cause to charge **TRISTAN KAREEM DAVIS** with conspiracy to distribute a controlled substance, to wit: cocaine base, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(B), in the Southern District of Iowa.

_____
Adam Plein
Special Deputy, FBI

Sworn to before me and subscribed in my presence this 12th day of November, 2019.

_____
Stephen B. Jackson Jr.
United States Magistrate Judge
Southern District of Iowa

7